All right, our next case for this morning is Guerra-Rocha v. Barr. Ms. Wagner Thank you, Your Honor, and may it please the Court, Laura Wagner for the petitioner Daniela Guerra-Rocha and her minor children Giovanni and Carlos. While in removal proceedings, Ms. Guerra-Rocha was the victim of a felonious assault. Ms. Guerra-Rocha later filed a U-Visa application based on that crime and requested that the Board of Immigration Appeals remand her case to the Immigration Court. The Board denied that request. In its decision, the Board makes no reference to the factor to which its own published case law gives primacy, the prima facie approvability of Ms. Guerra-Rocha's U-Visa application. Nor does the Board make any reference to this Court's decisions, Beas-Sanchez v. Sessions and LDG v. Holder, despite Ms. Guerra-Rocha's arguments regarding the Section 1182 D3 waiver before the Board. So I take it that the entirety of the Board's analysis is this sentence at the bottom of page 3 carrying over to page 1 and 2 of the Board's own opinion, 3 and 4 in the appendix. However, considering all relevant factors, including DHS's opposition to the motion, the collateral nature of the relief sought through the U-Visa petition, the timing of the request, and the likely delay of these administrative proceedings, the respondent has not shown that a remand is warranted. And then they cite LABR. That's it. Yes. That is the entirety of the decision on this point, Your Honor, and it is our contention that the brevity of that decision, particularly since it does not address this primary factor in the Court's case law, and the arguments we raise regarding the waiver is a legal error that warrants remand by this Court. So, to the first point about the prima facie approvability of the application, it is our contention that the Board impermissibly failed to follow its own precedential decision in matter of Sanchez-Sosa. The Board makes no comment whatsoever about that factor, does it? No. Notwithstanding that LABR, you know, you've got Sanchez-Sosa, but LABR, the later case, has the Attorney General saying immigration courts should apply a multi-factor test, but that the decision should turn primarily on the likelihood that the collateral relief will be granted and will materially affect the outcome. It says that about five times, actually, during that order. It does, Your Honor. And it's one of the places. And the Attorney General further notes in that decision that the LABR standard is consistent with Board precedent as it existed at that time, including matter of Sanchez-Sosa. Right. He cites Hashmi, and then he goes around and he cites Sanchez-Sosa as the case that extends Hashmi to U visas. Yes. And the U visa standard outlined in matter of Sanchez-Sosa goes directly to the two points that the Attorney General outlines in matter of LABR, whether or not the application is, in fact, likely to succeed and whether or not it would affect the outcome of removal proceedings. Because if Ms. Guerra-Rocha were to be granted a U visa or even to be granted deferred action, she would no longer be either removable, because she would have status, or the government— So it would have a material effect. You're saying that there's both the likelihood of success and the material effect. That's correct, Your Honor. And there has been no contention on the part of the government, either below or before this court, that Ms. Guerra-Rocha is not likely to succeed on her application. I would think that question—I mean, I've wondered about that question, naturally, because maybe underneath it all, there's a question whether whatever errors occurred were prejudicial. But the record as it stands shows that she obtained that certification from the police that you need for the U visa and that she—I mean, the guy winds up being acquitted, but maybe that's not terribly important. You might comment on that. Yes, the U visa—the standard that is outlined in the statute for the U visa is not that the prosecution has to be successful, but that she has to cooperate in it. He was not acquitted because she failed to show up to court. She did go and testify against him. He just was acquitted anyway. Which happens, yeah. It does happen, yes. Okay, so what you're asking for, I assume, is just—I mean, what we would need to do if we did anything was to ask the board to do the job that LABR and Sanchez-Sosa spell out for it. That is correct, Your Honor, and in addition to that, to also address the arguments that we made before the board regarding the Section 1182 D.3 waiver. This court has held that immigration judges do have concurrent jurisdiction to adjudicate that waiver in the context of the U visa, and we would like Ms. Guerra-Rocha to have that opportunity before the immigration court, as well as an opportunity to have her case continued so that USCIS can adjudicate her U visa application. So do you have any comment on footnote 2 of the board's opinion? May I grab a copy of it, Your Honor? Certainly. Where they say, our decision does not preclude the respondent from continuing to pursue the U visa petition, and she can ask for an administrative stay from DHS. Both of those statements are true, Your Honor, but they do not get to the whole context of what that would mean for the petitioner. Pursuing an administrative stay of removal means that she is subject to a removal order, whereas if her case had been remanded, she would no longer be subject to that order of removal. Further, while the statute does allow individuals to consular process U visa applications, meaning if their petition is approved, they can go and obtain an actual visa from an embassy or consulate in a foreign country, forcing the petitioner to leave the United States and do that, particularly when she's subject to a final order of removal, would make her case significantly more complicated. She's likely to trigger at least two grounds of inadmissibility by departing. Her sons are also likely to trigger additional grounds of inadmissibility by departing, which would make getting a waiver to come back harder. She actually has to seek permission to reapply from the attorney general if she departs under this final order of removal. It also undermines the congressional purpose behind creating the U visa application. The idea that Congress had when they created this application was to ensure that law enforcement could provide status to individuals while they cooperated in the investigation of crimes, and to remove individuals while they're waiting for their U visas would undermine that purpose, Your Honor. Okay. Unless there are any further questions, I will reserve the rest of my time for rebuttal. That would be fine. Thank you. Mr. Kim. Good morning, Your Honors. May it please the Court. The government does not dispute that prime visa approvability is an important consideration, but disputes that it's a mandatory factor. It's not a mandatory factor. I don't understand at all how you say that, because I went back, I'm waving around, you know, Sanchez, Sosa, and LABR. First of all, we have no signal. I'm just going to say we have no signal from the board that it considered the factors that the attorney general says numerous times in this order, primarily the likelihood that the collateral relief, that is to say here the U visa, will be granted and will materially affect the outcome of the removal proceedings. So unless you think the attorney general was just wasting his breath when he says this, in his order, he consolidates three cases. He mentions that he's gotten, I think he said, eight briefs amicus curiae, which he says were very helpful and so on. Yeah, eight amici. And that's what he comes up, he says, first, is there the primarily? So I don't see how you can just toss the primary factor out the window and turn to the secondary factors. Now, certainly, he also says, and I have no reason to think this is in any way problematic, good cause also may not exist when the person hasn't demonstrated diligence and so on, DHS opposes. But I don't see how the board has done its job by ignoring the primary two factors. Yes, Your Honor. Now, LABR is pertinent to this case, but I wouldn't say it's perfectly or strictly analogous. What's not binding about it? It's the Attorney General. It's August 16, 2018. It's a very timely statement, considered statement from the Attorney General. I mean, it is binding, but it's important to understand the particular context of that case. Well, if it's binding, then why, in this case, can the board, you, of course, under the Chenery Doctrine are forbidden from offering reasons that the board itself did not rely on. Right. So, whatever you may be supposing or whatever I may be supposing about this isn't the point. The question is, what did the board think? And the board omits the two primary factors. Why shouldn't we send this back to them and say, please follow LABR, your own binding precedent under the EOIR structure? So, the board's decision, or at least the explanation of why it declined to remand the case, is brief. It's more than brief. It's one sentence. It doesn't say anything about the two key factors. Now, it certainly could have been more fulsome, but essentially, the board is effectively stating that the other factors, namely the procedural factors, which are significant in this case, are such that they outweigh all the other relevant considerations. That's not what it says. It says, considering all relevant factors, including, and then it lists the things that it included. It doesn't say, you know, and I actually think if the sentence you propose had been there, if the board had said, we've considered the prima facie eligibility, we've considered the material effect, but in this case, we think that the other factors outweigh those, or we think that there isn't a good chance of success. If it, like, given, like, a glimmer into its thinking about that, I would think, well, you know, you refer, you defer to the board, that's all you have coming to you, but we don't have that. But I would also note that the procedural posture is different from LABR. Now, in this case, it's not the IJ denying a continuance. It's the board declining to remand the case so that a continuance could be pursued before the immigration judge, and I think that is significant. It's a subtle distinction, but it is important here. Now, if you look at the procedural history of the case, this petitioner did have the opportunity to apprise the judge of the fact that she had filed a petition for a U visa. If, yes. But remember what happened to her. She thinks that she has until December before, and they've scheduled her hearing in December, and then all of a sudden, just blam, she finds out the hearing is three days later in October for the convenience of this immigration judge who's moving, you know, and so she's got to scramble. People have reliance interests in court dates. I imagine if we had suddenly changed your court date and made it be two weeks earlier, you would have had to scramble yourself to accommodate that. So I don't think on this very specific record, you can blame her for lack of diligence. She gets it in what she thinks is two months early, you know, but it turns out to be not two months early. It turns out she can't get the certified things until a day or so after this suddenly rescheduled hearing. Yes, Your Honor. Now, respectfully, the government does disagree with this notion that she was blindsided by the changing of the date. Now, as early— What does the government think? As early as December 2016, she had the idea we're already in conversation about the filing of a U visa petition, and in fact, the idea was— But you have to do a lot of things. You've got to bring your petition together. You've got to get that law enforcement certification. The government surely doesn't want people to be filing ill-founded or frivolous U visa assertions. Of course not. Of course not. And so she proceeds to put all of this together, and she asks, you know, now—let's see. January 31, she files the motion to remand with documentation of 2018. Yes. She says, you know, the documents are there. I filed it on October 10, 2017, but that's literally days before the immigration judge, for reasons having nothing to do with her—it was not her lack of diligence that caused that date to happen. It was the convenience of the government. Well, Your Honor, if you look at the transcripts of all the hearings that took place before the immigration judge, the immigration judge was exceedingly solicitous and accommodating when it came to the possibility of filing a U visa petition as early as December of 2016, almost a full year, or more than a full year before she filed her motion to remand. He was telling her, if you're going to file a U visa petition, you need to make sure you get an attorney. Now, I won't be adjudicating that particular petition. USCIS will be, but that is something that I would consider. But of course, this only goes to the diligence factor. It doesn't solve my problem of the board's complete ignorance of the two factors, the attorney general stresses. Right. So, I mean, I would contend that, at the very least, the petitioner could have been more diligent. Now, was she appallingly dilatory when it came to filing her U visa petition? No. I mean, the record does show that in July 11, 2017, she did get the law enforcement certification signed. And I think that's in part attributable to the fact that the IJ in May, a full two months before, told her, if you're going to file a U visa petition, if you're so inclined to, make sure you get this done as soon as possible. And that if you do so, I would consider a continuance in that particular case. Now, she advised the immigration judge that she would do this long before. Now, granted, there was a changing of the date because the IJ was transferred, but it wasn't as if the IJ was refusing to even consider the possibility that she might be eligible for a U visa petition. But she gets all of this stuff in a timely manner vis-a-vis the board. Her receipts, which everybody insists on, are issued on October 20, 2017, which is the exact day of the hearing as rescheduled. Now, they would have been two months early if the December 15 date had held. Now, she not only got it before the board. She actually got it filed even while she was in proceedings before the IJ. So there's nothing wrong with her diligence. And if the board is going to take the position that delay is unacceptable when it's inside the boundaries of the government's own delay, that's a problematic position as well. How is she supposed to make the government speed up? Well, the question does remain as to why she failed to tell the IJ that she had filed a U visa petition. Had she actually given the judge notice of that, then he very well may have considered the possibility of a continuance. And we wouldn't be in this particular posture. Well, then he could have said promises, promises. She didn't have the verified, you know, certified copies yet. Well, at the very least, so yes, she didn't have the receipts of the U visa petition. Which were necessary. But she could have at least stated the simple fact that she had filed a U visa petition. That might have been enough for the IJ to consider a continuance at that particular juncture. But the IJ had no idea that this U visa petition had actually been filed. Now, I would note, Your Honor, that if you focus on stray paragraphs or sentences in LABR or Santa Sosa. It's not stray paragraphs. Honestly, I nitpicked the whole opinion. It's not stray. But, I mean, in a matter of Hashmi, the board does take care to say that the submission of the visa petition to the IJ assists in determining the viability of the underlying petition. And so these other factors do play in and can affect whether or not this prior fish approvability factor can even be considered in the first place. Because she didn't. No, you're turning it inside out. There is an interplay between the facts and they can't be viewed strictly in isolation of each other, Your Honor. Okay. I mean, all right. Thank you, Your Honor. So thank you very much. Thank you. Just a few brief points on rebuttal, Your Honors. First, there is a reason that the board has set up this prima facie approvability standard or as LABR puts it, looking at the likelihood of success. Applications that are likely to succeed are unlikely to be filed for dilatory reasons. When the application is likely to succeed, the foreign national has no reason to delay In fact, they generally would prefer it if the government would adjudicate their applications more quickly so that they can get their relief. The government's assertions that the fact that our certification is dated July 2017 is an indication that the application was dilatory in nature are not supported by the record, nor are they mentioned in the board's decision. There are a lot of reasons why a police department may not issue a certification right away. They may have too many to go through. They may be waiting to see if the foreign national cooperates. The date of the certification alone is not an indication that any action we took was dilatory in nature. Further, the government notes in the record that the immigration judge had discussed the U visa application with the petitioners. But in the final hearing date, going to your point, Your Honor, about the receipt notices, the immigration judge actually explicitly told petitioner that any motion to continue needed to have those receipt notices, which, as you noted, were issued on the date of the final hearing. I would also just like to bring one 8th Circuit case to your notice here. In Cabarro-Martinez v. Barr, the 8th Circuit actually looked at this particular issue. The board had denied a motion to remand for a U visa in part because the foreign national had not submitted those receipt notices. And the 8th Circuit upheld that as a reason to deny the motion to remand, though they did actually remand the case because the board had failed to look at the prima facie approvability of the application and had cited the collateral nature of the application in denying a motion to reconsider that original decision. Do you have a cite for that? It is 920 F3D 543. It was issued earlier this year out of the 8th Circuit. There are no further questions, Your Honor. We simply ask that this court remand the case so that the board can issue a more thorough decision. Thank you. Thank you. Thank you as well to the government. We'll take the case under advisement.